## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

SHANA E. CANNELL,          )
                                 )
             Plaintiff,       )
                                 )
v.                            )   Docket No. 1:14-cv-405-NT
                                 )
CORIZON, LLC, et al.,      )
                                 )
             Defendants.     )

## ORDER ON MOTION TO DISMISS OF DEFENDANTS STATE OF MAINE, DEPARTMENT OF CORRECTIONS AND LEDIA DARDIS

The State of Maine, Department of Corrections and Leida Dardis move to dismiss the Plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6) (ECF No. 16). For the reasons stated below, the motion is **DENIED**.

## BACKGROUND

This matter arises out of an employment dispute between the Plaintiff Shana E. Cannell ("**Cannell**") and the Defendants, *inter alia*, the State of Maine, Department of Corrections (the "**DOC**") and Leida Dardis ("**Dardis**," collectively referred to as the "**Defendants**"). The following facts, accepted as true for the purposes of a Rule 12(b)(6) motion, come from the Amended Complaint. Cannell began working for Corizon LLC ("**Corizon**"), another Defendant in this matter, on February 9, 2010 as a Licensed Practical Nurse at the Maine State Prison in Warren, Maine. Am. Compl. ¶ 13 (ECF No. 9). As of February 2010, Corizon had contracted

with the DOC to provide healthcare services for all of the DOC's correctional facilities. Am. Compl. ¶ 12. Cannell was hired by Tammy Hatch, Corizon's Health Service Administrator, and her immediate supervisor was Corizon's Director of Nursing, Brian Castonguay. Am. Compl. ¶ 18. In May of 2010, some of the staff, including DOC employees, made offensive comments to Cannell daily because they came to suspect that she was dating a white male corrections officer. Am. Compl. ¶¶ 20-22. One DOC employee struck her in the arm.[1] Am. Compl. ¶¶ 21.

In response to this harassment, Cannell filed numerous reports about the harassment to both Castonguay and Hatch in early June of 2010. Am. Compl. ¶ 23. The reports prompted "acts of discriminatory and retaliatory harassment" towards Cannell, which included: being ordered to clean up a bio-hazard; not being protected from a dangerous inmate who threatened her; the ransacking of her car without any corrective action; being disciplined for missing work even though she had prior approval to miss work; being denied paid time off while it was granted for others; and being reprimanded for breaks while other staffers were permitted to take longer breaks. Am. Compl. ¶ 24.

On July 25, 2010, Cannell sustained an injury that lingered into September of 2010. Am. Compl. ¶¶ 26-27. In early September, Cannell met with Hatch to explain that she would need to lay down at work at times because of her injury. Am. Compl. ¶¶ 28-29. Hatch told Cannell to do what she needed to do. Am. Compl. ¶ 30. Cannell also informed Hatch at this meeting about new offensive comments that had been

---

[1]    The Amended Complaint contains a litany of specific examples of offensive comments allegedly made by the Defendants. *See* Am. Compl. ¶ 22.

directed at her by a DOC sergeant.[2] Am. Compl. ¶ 31. When Cannell asked about the status of her earlier complaints, Hatch told Cannel that they were still being investigated and instructed her to "deal with it." Am. Compl. ¶ 33. Cannell said that she should not have to deal with any harassment and left Hatch's office. Am. Compl. ¶ 34. Soon after, Hatch came looking for Cannell to apologize and told her that they needed to set up a meeting with Dardis, a Deputy Warden at the Maine State Prison. Am. Compl. ¶ 36.

In early October of 2010, Cannell ran into Dardis by chance and reported her concerns regarding racial discrimination and harassment. Am. Compl. ¶ 38. Dardis did not take any "follow-up action in response to" her conversation with Cannell. Am. Compl. ¶ 38. On October 13, 2010, Castonguay called Cannell to his office and showed her still pictures of Cannell putting her head down on a desk at work on September 26, 2010. Am. Compl. ¶ 39. Castonguay asked Cannell if she had been sleeping, and Cannell explained that she was not sleeping, but rather laying down in order to alleviate back pain as previously authorized by Hatch. Am. Compl. ¶¶ 40-42. Thereafter, Cannell completed a written report stating that she had not been asleep on September 26, 2010, and a security officer who was present on that day also filled out a report confirming that Cannell had not been asleep. Am. Compl. ¶¶ 43-44.

The next day, a sergeant told Cannell that she should "request that Castonguay show her the videotape of the September 26th incident because it prove[d] that she was not asleep." Am. Compl. ¶ 45. When Cannell asked Castonguay

---

[2]    The sergeant allegedly remarked: "[O]f course your people like chocolate, a chocolate for a chocolate," and "your people like black coffee." Am. Compl. ¶ 31.

to let her view the video, he told Cannell that he had viewed it and knew that she was not asleep, but that he was still considering it "an incident of lack of situational awareness." Am. Compl. ¶¶ 46-47. Castonguay also brought up Cannell's reports of harassment, and he told her that she should have reported that her car had been ransacked sooner. Am. Compl. ¶ 50.

On October 14, 2010, Dardis emailed the Warden of the prison at 4:56 p.m. In the email, Dardis stated that Cannell had reported racist comments to Castonguay on October 13th. Am. Compl. ¶ 51. Later that night, Castonguay called Cannell and told her that Corizon had terminated her due to her lack of situational awareness. Am. Compl. ¶ 55. Cannell later received a letter from Corizon stating that she had been terminated because she was asleep on duty while a maximum security prisoner was nearby. Am. Compl. ¶ 62.

## PROCEDURAL HISTORY

On January 5, 2011, Cannell filed a timely complaint with the Maine Human Rights Commission ("**MHRC**") and the Equal Employment Opportunity Commission ("**EEOC**"). Cannell received a right-to-sue letter on December 18, 2014. Cannell filed an initial Complaint (ECF No. 1) against Corizon, Castonguay, Hatch, and Corizon nurse Larry Brayhall on October 14, 2014 and an Amended Complaint on March 18, 2015 to include additional claims against the original Defendants and to add the DOC and Dardis as parties. In lieu of filing an Answer, the DOC and Dardis moved to dismiss all of the claims against them, arguing that Cannel did not state any claim entitling her to relief. Defs.' Mot. to Dismiss (ECF No. 16).

4

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." In order to state a claim, a plaintiff must comply with Federal Rule of Civil Procedure 8(a)'s limited notice pleading standard that requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this rule does not require the complaint to set forth "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "it must nonetheless 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In determining whether the complaint is plausible, "the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012). If the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the complaint survives. *Iqbal*, 556 U.S. at 678. If, however, "the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Morales-Cruz*, 676 F.3d at 224 (citation and quotation marks omitted).

In employment discrimination cases, "plaintiffs need not plead facts in the complaint that establish a prima facie case . . . nor must they 'allege every fact

necessary to win at trial.' " *Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15,

24 (1st Cir. 2014) (quoting *Rodríguez–Vives v. P.R. Firefighters Corps of P.R.*, 743

F.3d 278 (1st Cir. 2014)). Instead, taken as a whole, "the allegations of the complaint

[must] make the claim . . . at least plausible." *Ocasio–Hernández v. Fortuño–Burset*,

640 F.3d 1, 14–15 (1st Cir. 2011).

## DISCUSSION

Cannell claims that the DOC violated both federal and state law. Specifically,

in Count II of her Amended Complaint, Cannell claims that the DOC discriminated

against her with respect to the terms of her employment, subjected her to a hostile

work environment, and terminated her employment because of her race, color, and

sex. Am. Compl. ¶ 76. Cannell further alleges that the DOC engaged in unlawful

retaliation under the Maine Human Rights Act "(**MHRA**"), 5 M.R.S.A. § 4551 *et seq*.,

and the Maine Whistleblowers Protection Act ("**MWPA**"), 26 M.R.S.A. § 831 *et seq*.

Am. Compl. ¶ 77. Moreover, Cannell claims that the DOC participated in unlawful

discrimination against Plaintiff by aiding and abetting Corizon's unlawful

discrimination against her in violation of 5 M.R.S. § 4553(10)(D). Am. Compl. ¶ 78.

Cannell also claims that the DOC is liable because Corizon was acting as its agent

when it discriminated against Cannell under 5 M.R.S. § 4553(10)(E), and because the

DOC interfered with Cannell's exercise and enjoyment of the rights protected under

the MHRA in violation of 5 M.R.S. § 4633(2). Am. Compl. ¶¶ 79-80.

Count III alleges that Dardis, while acting under color of state law, violated

Cannell's constitutional rights to be free of discrimination based on race and sex and

her First Amendment right to report unlawful discrimination without retaliation in violation of 42 U.S.C. § 1983. Am. Compl. ¶¶ 84-86. Cannell asks the Court to declare that her constitutional rights were violated, grant injunctive relief, and award compensatory and punitive damages. Each claim is addressed below.

## I. Count II—Cannell's claims under Title VII, the MHRA, and the MWPA

Cannell first asserts discrimination and retaliation claims against the DOC.[3] Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Further, Title VII makes it unlawful for an employer to discriminate against any of its employees for opposing unlawful employment practices. 42 U.S.C.A. § 2000e-3(a). Although directly employed by Corizon, Cannell claims that the "DOC functioned as a joint employer of Cannell throughout her employment by [Corizon] at the Maine State Prison." Am. Compl. ¶ 14. Thus, as a threshold matter, I must first assess whether the Amended Complaint sufficiently alleges that Corizon and the DOC were joint employers.

### A. Joint Employer Doctrine

Joint employers are not members of a single, integrated enterprise. *Astrowsky v. First Portland Mortgage Corp.*, 887 F. Supp. 332, 336 (D. Me. 1995). Instead, joint

---

[3]     Because "Maine courts apply the MHRA in accordance with federal anti-discrimination law," *Forrest v. Brinker Int'l Payroll Co., LP*, 511 F.3d 225, 228 n.1 (1st Cir. 2007), I consider Cannell's claim under Title VII and her claim under the MHRA concurrently. Likewise, my inquiry into Cannell's Maine Whistleblower Protection Act claim is also guided by federal law. *See Halkett v. Corr. Med. Servs., Inc.*, 763 F. Supp. 2d 205, 220 (D. Me. 2011) ("The MWPA analysis is guided by federal case law construing analogous statutes.").

employers "are 'what they appear to be'—independent legal entities that have merely 'historically chosen to handle jointly . . . important aspects of their employer-employee relationship.' " *Id.* (quoting *NLRB v. Browning–Ferris Industries, Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982)). "The basis for the finding that two companies are 'joint employers' is that 'one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.' " *Torres-Negron v. Merck & Co., Inc.*, 488 F.3d 34, 41 n.6 (1st Cir. 2007) (quoting *Rivas, et al. v. Federacion de Asociacias Pecuarias de Puerto Rico*, 929 F.2d 814, 820 n.17 (1st Cir. 1991)). Joint employer relationships only "exist[] where two or more employers exert significant control over the same employees and share or co-determine those matters governing essential terms and conditions of employment." *Holyoke Visiting Nurses Ass'n v. NLRB*, 11 F.3d 302, 306 (1st Cir. 1993). A finding that two entities are joint employers "only affects each employer's liability to the employee for their own actions, not for each other's actions." *Torres-Negron*, 488 F.3d at 41 n.6.

Courts examine a number of factors in determining the existence of joint employer status, including: "supervision of the employees' day-to-day activities; authority to hire, fire, or discipline employees; authority to promulgate work rules, conditions of employment, and work assignments; participation in the collective bargaining process; ultimate power over changes in employer compensation, benefits and overtime; and authority over the number of employees." *Rivera-Vega v. ConAgra,*

*Inc.*, 70 F.3d 153, 163 (1st Cir. 1995). The determination of whether joint employer status exists is generally a factual question. *Id.*

The DOC argues that Cannell's allegations in the Amended Complaint concerning the alleged joint employer relationship are conclusory and merely recite the elements used to determine joint employer status under First Circuit law. Defs.' Mot. to Dismiss 7. In its reply, the DOC cites to two cases where courts concluded that different departments of corrections that worked with private contractors were not joint employers. *See Zinn v. McKune*, 143 F.3d 1353, 1359-60 (10th Cir. 1998) (affirming district court's grant of summary judgment for Kansas Department of Corrections where evidence demonstrated that plaintiff was not an employee of the Department under Title VII even though plaintiff assisted in traditional governmental functions); *Am. Fed'n of State, Cnty. & Mun. Employees, Council 31 v. State Labor Relations Bd.*, 839 N.E.2d 479, 492 (Ill. 2005) (holding that the Illinois Department of Corrections was not a joint employer with a private contractor under the National Labor Relations Act). Further, the DOC argues that their Health Care Policy No. 18.5 demonstrates that they did not have control over the day-to-day operations of the Corizon nursing staff.[4] Defs. Reply 3-4 (ECF No. 20). Specifically,

---

[4]        Cannell attached this document to her opposition. Defs. Ex. 2, DOC Healthcare Services Policy (ECF No. 19-2). Normally, "[u]nder 12(b)(6), [a] district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). However, the First Circuit has recognized a number of exceptions to this general rule "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009). Here, I am free to consider the Health Care Policy because the parties do not dispute its authenticity.

the DOC argues that Procedure N, which governs Nursing Protocols, demonstrates that Corizon—not the DOC—controlled the manner in which nurses were trained and assessed. *See* Defs. Ex. 2, DOC Healthcare Services Policy 12-14 (ECF No. 19-2). Thus, according to the DOC, Cannell cannot sustain her claims against it under Title VII, the MHRA, and the MWPA.

Cannell has alleged sufficient facts to survive a motion to dismiss on the issue of whether the DOC and Corizon were joint employers. Cannell worked at a facility operated by the DOC—the Maine State Prison. Am. Compl. ¶ 13. She has alleged that she was required to receive training from DOC employees, and that Corizon's Health Service Administrator Tammy Hatch told her that they needed to speak with DOC employee Deputy Warden Dardis about Cannell's reports of discrimination. Am. Compl. ¶¶ 16, 36. Further, Cannell alleged that she did in fact report her complaints to Dardis, and that the DOC, through Dardis, actively participated in the decision to terminate Cannell's employment. Am. Compl. ¶¶ 38, 51-53.

Both *Zinn* and *State Labor Relations Board* were decided on established factual records, not under Federal Rule 8(a)'s liberal notice pleading standard. The DOC does not cite any cases where a court dismissed similar claims under a joint employer theory at the motion to dismiss stage. To the contrary, most courts addressing the issue have held that the factual nature of the inquiry demands the opposite result. *See, e.g., Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 727 (D. Md. 2013) (discussing how the joint employer inquiry is fact-bound and not appropriate for resolution as a matter of law); *Brown v. Corr. Corp. of Am.*, 603 F.

Supp. 2d 73, 79 (D.D.C. 2009) (citation and internal quotation marks omitted) ("Determining whether the District and CCA were plaintiff's joint employers—a determination that hinges upon, *inter alia*, whether the District possessed sufficient control over CCA employees—is essentially a factual issue . . . Such a factual issue is plainly inappropriate to resolve on a motion to dismiss pursuant to Rule 12(b)(6)."); *Bloom v. Crook*, 78 F. Supp. 2d 1, 3 (D. Me. 1999) ("Therefore, under [the joint employer test], the Court cannot conclude at this stage of the proceedings that Maine is not Bloom's employer."). Because the determination of joint employer status is a fact-intensive inquiry*, see Rivera-Vega*, 70 F.3d at 163, and because Cannell has alleged enough facts indicating DOC control over her employment, her claims under Title VII, the MHRA, and the MWPA cannot be dismissed at this stage.

**B. Whether the DOC Caused an Adverse Employment Action**

The DOC next contends that Cannell's Amended Complaint fails to state a claim for discrimination or retaliation because Cannell has not sufficiently alleged that the DOC caused her to suffer an adverse employment action.

### 1.  Racial Discrimination

To establish a prima facie case of racial discrimination, a plaintiff must allege that:

> (1) he belonged to a protected class, a racial minority; (2) he was performing his job at a level that rules out the possibility that he was fired for job performance; (3) he suffered an adverse job action by his employer; and (4) his employer sought a replacement for him with roughly equivalent qualifications.

*Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003). The DOC argues that Cannell's claim for race discrimination must be dismissed because she has failed to allege that the DOC caused any adverse employment job action. Defs.' Mot. to Dismiss 9.

The Amended Complaint sets forth numerous allegations of racially derogatory remarks made by DOC staff, including captains and sergeants. *See* Am. Compl. ¶¶ 20-22. Cannell further alleges that: (1) she was ordered to clean up a bio-hazard; (2) she was not protected when an inmate made threats against her; (3) her vehicle was ransacked; (4) she was disciplined for missing work even though her absences had been pre-approved; (5) she was denied paid time-off when it was granted to others under similar conditions; (6) she was reprimanded for breaks when other staff were permitted to take longer breaks; and (7) she was fired. Am. Compl. ¶¶ 24, 55.

The numerous allegations of racially derogatory remarks, coupled with Cannell's allegations of being treated differently than her co-workers and being terminated, support the inference that Cannell was discriminated against on account of her race. Drawing all reasonable inferences in Cannell's favor, these allegations are sufficient to state a plausible claim for race discrimination.

### 2.  Hostile Work Environment

Federal and state law prohibit the maintenance or tolerance of a "hostile or abusive work environment." *Billings v. Town of Grafton*, 515 F.3d 39, 47 (1st Cir. 2008). A hostile or abusive work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Torres-Negron v. Merck & Co., Inc.*, 488 F.3d 34, 39 (1st Cir. 2007) (citation and quotation marks omitted). Whether a hostile work environment exists is normally a question reserved for the fact finder. *See Schoendorf v. RTH Mech. Contractors, Inc.*, No. 2:12–cv–179–GZS, 2012 WL 3229333, at *4 (D. Me. Aug. 6, 2012).

Cannell alleges that some of the staff at the prison, including captains and sergeants, harassed her on a daily basis with offensive comments because they suspected she was dating a white corrections officer. Am. Compl. ¶¶ 20-21. Further, a captain allegedly instructed Cannell to clean up a room because cleaning up messes is what "your people do," and a sergeant allegedly remarked: "[O]f course your people like chocolate, a chocolate for a chocolate" and "your people like black coffee." Am. Compl. ¶¶ 1, 31. Looking at the facts alleged in the Amended Complaint in the light most favorable to Cannell, these allegations are sufficient to support her hostile work environment claim.

### 3. Retaliation

To assert a claim for retaliation under state and federal law, Cannell must allege "that (1) she engaged in an activity protected by the applicable statute; (2) she suffered an adverse employment action; and, (3) the adverse employment action was causally connected to the protected activity." *Osher v. Univ. of Maine Sys.*, 703 F. Supp. 2d 51, 65 (D. Me. 2010) (citing *Fantini v. Salem State College*, 557 F.3d 22, 32 (1st Cir. 2009)).

The DOC erroneously contends that the Amended Complaint does not set forth sufficient facts to plausibly claim that DOC caused any adverse action taken against Cannell. Defs.' Mot. to Dismiss 9. The Amended Complaint asserts that Cannell engaged in protected activity by reporting alleged racial discrimination to Defendant Dardis. Am. Compl. ¶ 38. Dardis did not investigate any of Cannell's allegations. Am. Compl. ¶¶ 38, 52.  Less than two weeks after engaging in this protected activity, Cannel suffered an adverse employment action when she was terminated. Am. Compl. ¶ 56. Cannell further claims that the DOC participated in the decision to fire her. Am. Compl. ¶ 17. This allegation is supported by reference to an email Dardis sent on the day Cannell was fired to the Warden of the prison. This email establishes that Dardis spoke with Castonguay about Cannell's pending termination and Cannell's allegations of racial harassment.[5] Am. Compl. ¶ 51; Defs.' Ex. A (ECF No. 16-1). Moreover, Castonguay had also spoken to Cannell on the day she was terminated regarding her reports of racial discrimination and harassment at work. Am. Compl. ¶¶ 45-50.

These allegations, taken as true and drawing all reasonable inferences in favor of Cannell, are sufficient to establish a plausible claim that the DOC played a causal role in Cannell's termination.[6] *See e.g., Nakai v. Wickes Lumber Co.*, 906 F. Supp.

---

[5]    I am free to consider this document because it is sufficiently referred to in the Amended Complaint, *see* Am. Compl. ¶¶ 51-52, and the parties do not dispute its authenticity.

[6]    For the same reasons, Cannell's claim under the MWPA also survives the Defendants' motion to dismiss. *See Halkett v. Corr. Med. Servs., Inc.*, 763 F. Supp. 2d 205, 220 (D. Me. 2011) (citation and internal quotation marks omitted) (noting that the elements of an MWPA claim are: "(1) the employee engaged in activity protected by the statute; (2) the employee was the subject of an adverse employment action; and, (3) there was a causal link between the protected activity and the adverse employment action.").

698, 705 (D. Me. 1995) ("Evidence of proximity in time between the protected activity and the adverse employment action is among the most common forms of proof of retaliatory motive . . . ."); *Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("[C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity."); *U.S. EEOC v. Global Horizons, Inc.*, 904 F. Supp. 2d 1074, 1088 (D. Haw. 2012) (citation and internal quotation marks omitted) ("[T]he causal link between protected activity and adverse employment action may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.").[7]

## II.   Count III—Cannell's § 1983 Claims

Section 1983 provides remedies for individuals deprived of federal rights by officials acting under color of state law. 42 U.S.C. § 1983. Unlike Title VII, which applies only to employers, § 1983 permits suit against persons in their individual capacities.  *Powell v. City of Pittsfield*, 143 F. Supp. 2d 94, 115 (D. Mass. 2001). In order for a § 1983 claim to be actionable, the claim must arise from the Constitution or laws of the United States. *Cruz-Erazo v. Rivera-Montanez*, 212 F.3d 617, 621 (1st

---

[7]    In their reply brief, the Defendants argue that the Plaintiff's claims for aiding and abetting, interference, and discrimination by agency conduct "should be dismissed because Cannell failed to exhaust her administrative remedies with respect to each of these separate and distinct claims." Defs.' Reply 4 (ECF No. 20). Arguments belatedly raised for the first time in a reply brief are normally waived. *See Noonan v. Wonderland Greyhound Park Realty LLC*, 723 F. Supp. 2d 298, 349 (D. Mass. 2010) (citing cases). Without the benefit of additional briefing on this argument, I do not consider it. Likewise, because I find that Cannell has adequately alleged violations of Title VII, the MHRA, and the MWPA, I do not address the Defendants' arguments regarding injunctive relief and mootness.

Cir. 2000). Here, Cannell's § 1983 claims are derived from the First Amendment and the Equal Protection Clause.

## A. First Amendment

The First Amendment is offended when a state actor retaliates against an individual for engaging in constitutionally protected speech.[8] *See Rosaura Bldg. Corp. v. Municipality of Mayaguez*, 778 F.3d 55, 66 (1st Cir. 2015). In order to establish a prima facie case of First Amendment retaliation, Cannell must show: (1) that "she engaged in constitutionally protected conduct"; (2) that "she was subjected to an adverse action by the defendant"; and (3) that "the protected conduct was a substantial or motivating factor in the adverse action." *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012). In the First Amendment context, an adverse employment action exists where "the defendants' acts . . . have a chilling effect on the employee's exercise of First Amendment rights." *Barton v. Clancy*, 632 F.3d 9, 29 (1st Cir. 2011). In terms of the third element, "temporal proximity . . . may serve as circumstantial evidence of retaliation." *Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011) (citation and internal quotation marks omitted).

### 1. Whether Dardis Caused a Constitutional Violation

Defendant Dardis contends that Cannell's § 1983 claims should be dismissed because she does not sufficiently allege that Defendant Dardis participated in any of the claimed wrongful acts or that Dardis's alleged inaction caused any constitutional violation. Defs.' Mot. to Dismiss 9.

---

[8]    The First Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment.  *See Gitlow v. New York*, 268 U.S. 652, 630 (1925).

The First Circuit has instructed courts to apply common law tort principles when examining causation under § 1983. *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 50 (1st Cir. 2009). Significantly, the First Circuit has consistently held that the necessary causal connection under § 1983 "can be established not only by some kind of . . . personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* (citation and internal quotation marks omitted). Thus, an individual is liable even for " 'those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties.' " *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 561 (1st Cir. 1989) (quoting *Marshall v. Perez Arzuaga*, 828 F.2d 845, 848 (1st Cir. 1987), *cert. denied*, 484 U.S. 1065 (1988)).

Cannell's allegations are sufficient to support a plausible inference that Dardis played a causal role in the decision to terminate Cannell in retaliation for her reports of racial discrimination. As noted above, "temporal proximity" between protected conduct and an adverse employment action can give rise to an inference of retaliation. Moreover, while Dardis may not have been the ultimate decision-maker, the Amended Complaint alleges that Dardis spoke with Castonguay about Cannell's reports of racial harassment before he fired Cannell on October 14, 2010. Given this communication, coupled with the allegation that Cannell reported her complaints of racial harassment directly to Dardis less than two weeks earlier and that Dardis did not investigate Cannell's claims, it is plausible to infer that Dardis set in motion the

decision to terminate Cannell. *See Jaundoo v. Clarke*, 690 F. Supp. 2d 20, 31 (D. Mass. 2010) ("Even if [if the defendant] was not directly responsible for the medical decision to take away the plaintiff's crutches under the DOC's policy, the plaintiff has alleged facts showing that his conduct set in motion a series of actions by others that caused the alleged constitutional deprivation."). Thus, the Amended Complaint adequately alleges that Dardis's own conduct set in motion a series of events that led to a violation of Cannell's constitutional rights.

### 2.  Matter of Public Concern

Defendant Dardis also argues that the Amended Complaint is insufficient to state a First Amendment claim because Cannell does not allege that her speech was related to a matter of public concern. Defs.' Mot. to Dismiss. 13. The Defendant notes that Cannell's speech related to alleged discrimination and harassment against her, not others. Defs.' Mot. to Dismiss 15.

"Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community . . . ." *Lane v. Franks*, 134 S. Ct. 2369, 2380 (2014) (citation and internal quotation marks omitted). The inquiry into whether speech relates to a matter of public concern is guided by the content, form, and context of the speech. *Id.* The fact that the employee's speech relates to "her own personal employment situation . . . makes it no less essential that she 'be able to speak out freely without fear of retaliatory dismissal.' " *King v. Maine Dep't of Corr.*, No. 1:13-cv-00163-JDL, 2015 WL 2092526, at *4 (D. Me. May 5, 2015) (quoting *Connick v. Myers*, 461 U.S. 138, 147 (1983)).  In order to survive a motion to dismiss, a plaintiff need not conclusively establish that

her speech was made as a citizen; "it is sufficient that the complaint alleges facts that plausibly set forth citizen speech." *Decotiis v. Whittemore,* 635 F.3d 22, 34-35 (1st Cir. 2011). The determination of whether a plaintiff spoke as a citizen or an employee is fact-intensive. *Id.* at 35 n.15.

Defendant Dardis cites *Connick*, 461 U.S. at 147-48 and *Tang v. State of R.I., Dep't of Elderly Affairs*, 163 F.3d 7, 12 (1st Cir. 1998) for the proposition that individual employment grievances do not rise to the level of matters of public concern. *See Connick*, 461 U.S. at 148 (assistant district attorney's circulation of a questionnaire in the district attorney's office inquiring about whether other employees had confidence in their supervisors was not considered a matter of public concern); *Tang*, 163 F.3d at 12-13 (complaints employee made about working conditions—e.g., relocation of workspace and a filing cabinet—which were not alleged to be based on race or gender did not constitute a matter of public concern). The allegations in the Amended Complaint are a far cry from the individual personal grievances at issue in *Connick* and *Tang*. Cannell's allegations of daily offensive racially derogatory remarks—made by state employees at a state-operated facility— involve a matter of public concern. *See Burrell v. Bd. of Trustees for the Univ. of Maine Sys.*, 15 F. App'x 5, 7 (1st Cir. 2001) (because plaintiff failed to allege that he complained of "racial discrimination—speech which inherently addresses a matter of public concern"—before his termination, plaintiff failed to state a First Amendment claim); *Perry v. McGinnis*, 209 F.3d 597, 608 (6th Cir. 2000) ("[A] complaint of racially disparate treatment, which consisted of an internal grievance, is a matter of public

concern."); *Leahy-Lind v. Maine Dep't of Health & Human Servs.*, No. 1:13-CV-00389-GZS, 2014 WL 4681033, at \*18 (D. Me. Sept. 19, 2014) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006)) ("While it is true that the First Amendment 'does not empower [public employees] to constitutionalize the employee grievance,' it is also true that certain speech is of an inherent public concern . . . ."). Contrary to Defendant Dardis's contention, Cannell's allegations are more than sufficient at the motion to dismiss stage to establish that her complaints touched on a matter of public concern.

### B. Equal Protection

Cannell asserts but does not develop an Equal Protection claim under § 1983 against Dardis. Other than the claim that she did nothing to discriminate against Cannell, Defendant Dardis focuses her motion to dismiss on the First Amendment retaliation claim rather than the Equal Protection Claim. I cannot discern whether the Equal Protection claim is based on theories of racial discrimination, hostile work environment, and/or retaliation. This may be significant because there appears to be some disagreement regarding whether a "pure" retaliation claim is actionable under the Equal Protection clause. *Compare Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) ("A pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause.") *with Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82 (2d Cir. 2015) ("When a supervisor retaliates against an employee because he complained of discrimination, the retaliation constitutes intentional discrimination against him for purposes of the Equal Protection Clause."). Because it is not addressed by the parties, and because the claim otherwise survives the motion

to dismiss based on the alleged First Amendment violation, I will skip over this issue for now.

## III.   Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.' " *Wood v. Moss*, 134 S. Ct. 2056, 2066 (2014) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)). Determining whether the second prong is met requires two further inquiries. *See Drumgold v. Callahan*, 707 F.3d 28, 42 (1st Cir. 2013). First, the court must determine "whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Mosher v. Nelson*, 589 F.3d 488, 493 (1st Cir. 2009) (quoting *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009)). This inquiry "focuses on the clarity of the law at the time of the alleged civil rights violation." *Maldonado*, 568 F.3d at 269. Second, the court must consider "the specific facts of the case at bar," *Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 9 (1st Cir. 2013), and ask whether "a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." *Maldonado*, 568 F.3d at 269.

As for the first prong of the qualified immunity inquiry, I have already found that Cannell has stated a claim for retaliation under the First Amendment. Turning to the second prong, it is well-established that a public employer cannot deny a benefit to a person because of constitutionally protected speech. *See, e.g., Perry v.*

*Sindermann*, 408 U.S. 593, 597 (1972); *see also Bennett v. City of Holyoke*, 230 F. Supp. 2d 207, 227 (D. Mass. 2002) *aff'd*, 362 F.3d 1 (1st Cir. 2004) ("Decades of law have clearly established that a public employer may not discipline an employee for protected speech.").

The Defendants do not contest this point, but rather argue that Dardis is shielded by qualified immunity because "[t]he Amended Complaint does not allege that Dardis herself engaged in any discriminatory conduct . . . ." Def.'s Mot. to Dismiss 17. In other words, the Defendants' contention is similar to their earlier causation argument—Dardis would not reasonably believe that her actions were unlawful because *her* conduct did not cause a constitutional injury. *See* Def.'s Mot. to Dismiss 16. However, as noted above, the First Circuit has long-recognized liability for "setting in motion a series of acts by others which the actor" knew or reasonably should have known "would cause others to inflict [a] constitutional injury." *Gutierrez–Rodriguez*, 882 F.2d at 561 (quoting *Springer v. Seaman*, 821 F.2d 871, 879 (1st Cir. 1987)); *see also Sanchez,* 590 F.3d at 51; *King*, 2015 WL 2092526, at *6 (addressing a similar qualified immunity argument). Therefore, the law was clearly established at the time of Dardis's alleged actions that someone in the shoes of Dardis should have known that triggering the termination of an employee in retaliation for asserting charges of racial discrimination would inflict a constitutional injury.

The Defendants attempt to distinguish these cases by arguing that the "facts alleged in the Amended Complaint . . . do not permit an inference that Dardis acted in any way to prompt [Corizon] to terminate Cannell's employment or to influence

22

the decision." Defs.' Reply 8. Instead, the Defendants contend that the alleged facts only establish that Dardis was informed by Corizon that Cannell would be terminated. Defs.' Mot. to Dismiss 8. The Defendants' argument is not persuasive. The alleged facts—taken as true for purposes of this motion—assert that Dardis spoke to Castonguay regarding Cannell immediately before she was terminated on October 14, 2010. While Dardis's email states that Cannell was being terminated for her conduct in the clinic, the proximity in time between this conversation and Cannell's complaint to Dardis concerning racial harassment supports the plausible inference that Dardis set in motion Castonguay's decision to terminate Cannell for engaging in protected activity.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendants' motion to dismiss (ECF No. 16).

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 11th day of December, 2015.